UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROLYN G.,

                     Plaintiff,

v.                                                      5:19-CV-813
                                                      (TWD)

COMMISSIONER OF SOCIAL
SECURITY,

                     Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                   HOWARD D. OLINSKY, ESQ.
 *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.        PRASHANT TAMASKAR, ESQ.
 *Counsel for Defendant*
Office of Regional General Counsel
26 Federal Plaza - Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Carylon G. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's complaint is dismissed.

**I.     BACKGROUND**

On November 13, 2015, Plaintiff protectively filed Title II and Title XVI applications for disability insurance benefits and supplemental social security income alleging disability beginning September 24, 2014. (Administrative Transcript[1] at 15.) These claims were denied on November 10, 2016. T. at 175-76. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). T. at 213-15. She subsequently appeared at an administrative hearing before ALJ Robyn L. Hoffman on August 28, 2018. T. at 122-58. Vocational expert Joseph Atkinson also testified. *Id.*

On October 18, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. T. at 16. The ALJ's decision followed the Social Security Administration's ("SSA") five-step sequential evaluation process for determining whether an adult is disabled. *See* 20 C.F.R. § 416.920(a). At step two, the ALJ found Plaintiff suffered from the following severe impairments: general anxiety disorder and depressive disorder. T. at 18. The ALJ found, based on the above-stated impairments, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [she] should work at simple, routine, and repetitive tasks. [She] should work in a low stress job defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting. [Plaintiff] should also have occasional contact with co-workers, supervisors, and the public.

T. at 20.

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

In making her RFC determination, the ALJ considered medical records and opinion evidence. As relevant here, the ALJ considered the opinions of Karen Vitkus, FNP-C ("NP Vitkus"), whom Plaintiff had seen for treatment since December 15, 2015. T. at 24-25. Specifically, the ALJ considered NP Vitkus' medical source statements from January 25, 2017, and July 24, 2018, which Karin Kroeger, M.D. ("Dr. Kroeger") endorsed (the "Kroeger-Vitkus opinions"). T. at 24-25, 475-80, 525-27. The Kroeger-Vitkus opinions provide Plaintiff is unable to meet competitive standards in her ability to maintain attention for a two-hour segment, maintain regular attendance and be punctual, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and travel in an unfamiliar place. T. at 476, 526. The Kroeger-Vitkus opinions find Plaintiff has no useful ability to complete a normal workday without interruption from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, and use public transportation. T. at 476, 526. Finally, the opinions estimate Plaintiff would be off-task more than twenty percent of an eight-hour workday and be absent more than four days per month. T. at 477, 527.

In reaching her RFC determination, the ALJ assigned the Kroeger-Vitkus opinions "some weight" because "their opinions [were] not entirely consistent with the complete record of medical evidence." T. at 25. Specifically, the ALJ discussed the limited treatment Plaintiff received along with the competing opinions of several consulting physicians to discount the Kroeger-Vitkus opinions. T at 18-25. The ALJ also found the "extreme assessments of claimant's overall function" in the Kroeger-Vitkus opinions was inconsistent with NP Vitkus' treatment notes, which indicated Plaintiff's symptoms were not as severe. *Id*.

Given Plaintiff's RFC, the ALJ concluded she was not disabled because there were significant numbers of jobs in the national economy she could perform. Specifically, the ALJ noted the vocational expert testified someone of Plaintiff's "age, education, work experience, and residual functional capacity" could perform as a machine feeder, sorter II, or housekeeping cleaner. T. at 26.

Plaintiff sought review of the ALJ's decision to the Appeals Council. On May 14, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. at 1-3.

On December 2, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. (Dkt. No. 1.) Pursuant to General Order 18, each party submitted supporting briefs that this Court treats as competing motions for judgment on the pleadings. (Dkt. Nos. 10, 12.)

The main thrust of Plaintiff's challenge is the ALJ improperly granted less weight to the Kroeger-Vitkus opinions and failed to account for the changing severity of Plaintiff's mental impairments. (Dkt. No. 10.) Plaintiff also argues substantial evidence does not support the RFC. *Id*. Defendant, on the other hand, asserts the ALJ appropriately considered the medical opinions and substantial evidence supports the ALJ's decision. (Dkt. No. 12.)

## II.  DISCUSSION

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.     Standard for Benefits[2]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the SSA promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her

---

[2]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

>past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### C.   Treating Physician Rule

As noted above, Plaintiff's primary argument is the ALJ erred in giving less weight to the opinions of Plaintiff's treating provider, NP Vitkus. The Court disagrees.

SSA regulations mandate specific procedures an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. Recently, the Second Circuit has articulated the procedure as a two-part analysis. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). First, the ALJ must decide whether the opinion is entitled to controlling weight. *See id*. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. *See Estrella*, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the

frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).

At both steps, the ALJ must "'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32 (brackets in the original)). Notably, an ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Estrella*, 925 F.3d at 96 (citing *Selian*, 708 F.3d at 419-20). However, if "a searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed," the Court will nonetheless affirm. *See Estrella*, 925 F.3d at 96 (citing *Halloran*, 362 F.3d at 32).

Turning to the ALJ's decision, she declined to give controlling weight to the Kroeger-Vitkus opinions and instead afforded them "some weight." T. at 25. In doing so, she found the opinions were inconsistent with the "complete record" of medical evidence and their extreme assessment did not comport with treatment notes which indicated Plaintiff's symptoms were not as severe. *Id.*

The Court notes the ALJ collapsed the two-part test into a single, comprehensive analysis of the Kroeger-Vitkus opinions. Nonetheless, the Court is satisfied the ALJ appropriately considered all the relevant factors in discounting the Kroeger-Vitkus opinions. With respect to whether to afford the Kroeger-Vitkus opinions controlling weight, the ALJ's decision indicates a thorough review of Plaintiff's limited treatment in relation to Kroeger-Vitkus opinions' extreme assessment of her impairments. T. at 18-25.

Plaintiff argues "the ALJ did not fully address the record as a whole" in finding the Kroeger-Vitkus opinions were inconsistent. (Dkt. No. 10 at 10.) Specifically, Plaintiff points to four records in the treatment notes, asserting these are "instances where Plaintiff was noted to be doing worse." *Id.* (citing T. at 448, 453, 456, 509). Relatedly, Plaintiff argues the ALJ failed to account for the changing severity of Plaintiff's mental impairments. The Court does not find these arguments persuasive.

For one, though the treatment notes dated January 18, 2016, and August 25, 2016, indicate some worsening symptoms, other records suggest her condition was more stable. T. at 456, 448, 453. For example, the treatment note dated March 17, 2016, indicates "[Plaintiff's] days are 50/50 with good and pain . . . [and] overall she feels better." T. at 453. Furthermore, some of the same records Plaintiff cited indicate she had cooperative attitude, appropriate affect, good eye contact, clear and fluent speech, no delusions, hallucinations, or obsessions, and no suicidality, homicidality, or dangerousness. T. at 448, 509, 520. Besides the four records Plaintiff cites to, the treatment note from December 5, 2016, shows Plaintiff's anxiety and depression is "stable" and she had more good days than bad days. T. at 522. Similarly, the treatment notes from June 12, 2017, and December 19, 2017, both state Plaintiff was feeling well, had lost weight, and had more good days than bad. T. at 519, 516. Moreover, the ALJ discussed how Plaintiff was feeling better after taking Sertraline and Ambien was improving her sleep significantly. T. at 21. Accordingly, the Court finds the ALJ appropriately considered the entire record and properly accounted for the varying degrees of symptoms Plaintiff reported throughout her treatment.

In sum, the ALJ properly concluded the medical records were inconsistent with the Kroeger-Vitkus opinions' extreme assessment of Plaintiff's impairments, including the inability

9

to complete a normal workday due to psychological symptoms; inability to accept instructions and respond appropriately to supervisors; inability to maintain attention for two-hour segments; inability to deal with normal stress; and being off-task for 20% of the workday and absent four days per work month. T. at 24-25. In other words, the examination and treatment records did not support the degree of restrictions the Kroeger-Vitkus opinions suggest. Therefore, the Court finds the ALJ provided "good reasons" for not affording controlling weight to the Kroeger-Vitkus opinions. *See Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019); *Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019).[3]

Furthermore, though the ALJ did not specifically recite the *Burgess* factors in her opinion, a searching review of the ALJ's reasoning shows she considered each relevant factor. *See Danielle B. v. Comm'r of Soc. Sec.*, No. 6:19-CV-0306 (TWD), 2020 WL 1933603, at *4 (N.D.N.Y. Apr. 22, 2020). To that end, the ALJ recognized NP Vitkus had been treating Plaintiff on a routine basis since December 2015. T. at 25. Specifically, the ALJ cited a treatment note from NP Vitkus dated December 15, 2015, indicating Plaintiff had not received any medical care since the 1980s. T. at 21. The ALJ cited records and opinions from March 2016, January 2017, July 2017, December 2017, and July 2018. T. at 21, 24-25. The ALJ's

---

[3] Plaintiff also argues that the ALJ "relied upon activities that pre-dated the alleged onset date, mischaracterized Plaintiff's activities of daily living . . . ." (Dkt. No. 10 at 11.) However, based on the hearing transcript, after the alleged onset date, Plaintiff was still engaged in daily activities like doing dishes and vacuuming the throw rugs every three days, taking care of her late husband's dog, and she stated she was going to get another dog so she could go out and walk the dog. T. at 139-40. One of the examination records dated October 29, 2016, shows that "she can cook, clean and do laundry. She can shower and dress." T. at 468. In her decision, the ALJ mentioned Plaintiff "was able to go to the dentist at some point and went somewhere to get a tattoo." T. at 22. The ALJ's analysis relative to Plaintiff's daily activities is, thus, sound.

discussion of these treatment notes indicates she acknowledged and considered the length and frequency of the treatment.

Moreover, the ALJ explained the nature and extent of the treatment Plaintiff received from these providers. For example, the ALJ mentioned NP Vitkus was not able to perform a physical examination. T. at 21. The ALJ also mentioned the efficacy of the medication NP Vitkus prescribed to Plaintiff. *Id.* Therefore, the Court finds the ALJ considered the nature and extent of Plaintiff's treatment with NP Vitkus.

Furthermore, as noted above, the ALJ discussed how the Kroeger-Vitkus opinions were inconsistent with the otherwise unremarkable treatment notes. Thus, the Court is satisfied the ALJ considered both the amount of medical evidence supporting the Kroeger-Vitkus opinions and the consistency of the opinions with the remaining medical evidence.

Finally, though the ALJ did not explicitly mention in her decision whether Plaintiff's treating providers were specialists, the medical source statements indicate NP Vitkus and Dr. Kroeger are not specialists, which in this case would be psychiatrists specialized in treating anxiety disorder and depression. During the hearing, the ALJ confirmed with Plaintiff that Dr. Kroeger was her primary care physician and both Dr. Kroeger and NP Vitkus were from Family Medical Care Group. T. at 145. Plaintiff also confirmed she did not receive mental health counseling from them. *Id.* By reviewing the medical records and confirming with Plaintiff the type of treatment she received from Dr. Kroeger and NP Vitkus, the ALJ considered the specialist factor.

In sum, a "searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Estrella*, 925 F. 3d at 96. Thus, the Court finds the

ALJ's decision demonstrates adequate consideration of the regulatory factors in weighing and affording some weight to the Kroeger-Viktus opinions.  *See* 20 C.F.R. § 404.1527(c)(2).

> **D.     RFC Determination**

Plaintiff also argues the ALJ offered no basis to support her RFC determination because the ALJ only assigned some weight to the treating opinions and discounted the limitations opined therein.  (Dkt. No. 10 at 9, 15.)  However, the Court finds ample evidence in the medical records to support the ALJ's RFC determination.  *See Monroe v. Commissioner of Social Security*, 676 Fed. Appx. 5, 7 (2d Cir. 2017) (summary order) (stating that a medical source statement or formal medical opinion is not necessarily required if "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity" (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013))); *cf. Pellam v. Astrue*, 508 F. App'x. 87, 90 (2d Cir. 2013) (summary order) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).

Here, although the ALJ only assigned some weight to the Kroeger-Vitkus opinions and discounted the limitations they opined, she relied on their treatment notes.  For example, the ALJ's RFC determination includes the following limitations: "[t]he claimant should work at simple, routine, and repetitive tasks.  The claimant should work in a low stress job defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting.  The claimant should have occasional contact with co-workers, supervisors, and the public."  T. at 20.  These limitations are consistent with the medical treatment notes that indicate Plaintiff's condition was stable.  *See, e.g.*, T. at 522 (stating "[a]nxiety/depression: stable.").

Moreover, Kalyani Ganesh, M.D.'s ("Dr. Ganesh") and Malcolm Druskin, M.D.'s ("Dr. Druskin") opinions support the RFC.  To that end, Dr. Ganesh examined Plaintiff on October 19,

2016, and determined she had no severe physical impairments. T. at 470. Dr. Druskin reviewed the evidence on June 2, 2017, during an informal remand review and determined Plaintiff's physical impairments were non-severe. T. at 481. The ALJ assigned great weight to these two doctors' opinions because their findings were consistent with the complete record of medical evidence. T. at 24. Additionally, the ALJ gave some weight to the opinion of consultative examiner Corey Anne Grassl, Psy.D. ("Dr. Grassl") who opined Plaintiff had "[n]o limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, or relate adequately with others. . . ." T. 23, 465. While Dr. Grassl found Plaintiff irritable and hostile with a depressed affect, the remainder of Plaintiff's mental status exam was normal such that the findings and the majority of Dr. Grassl's opinion are consistent with the RFC.

Thus, the Court finds the ALJ did not substitute her own judgment for competent medical opinions. Rather, the ALJ based her RFC determination on the findings in the treatment notes as well as the consulting opinions.

## III. CONCLUSION

In light of the foregoing, the Court finds substantial evidence supports the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, pursuant to Sentence Four of 42 U.S.C. §405(g).

Dated: July 10, 2020
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge

14